# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AIRCRAFT ENGINE LEASE FINANCE, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> AVIOR AIRLINES C.A., ) <br> ) <br> Defendant. ) | No. 20 C 5272 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

Plaintiff Aircraft Engine Lease Finance, Inc. ("AELF"), a commercial aircraft trading and leasing company, sold and provided financing for commercial aircraft to Defendant Avior Airlines C.A. ("Avior") for a number of years. After Avior's purchasing agent defaulted on its obligations to AELF related to the purchase and financing of certain aircraft, AELF and Avior entered into new agreements concerning these aircraft. Avior then defaulted on its payment obligations, prompting AELF to file this lawsuit and seek preliminary injunctive relief related to possession of and title to two aircraft and an aircraft engine. The parties entered into an agreement to resolve their dispute with respect to these two aircraft and the engine. In an amended complaint, AELF now asserts a breach of contract claim against Avior arising out of Avior's overarching default on its payment obligations. Avior has moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the parties' settlement precludes AELF from continuing to pursue this litigation against Avior and that AELF's breach of contract claim fails for lack of an enforceable contract. Because the parties did not contemplate AELF releasing the claim raised in the amended complaint as part of

their settlement and AELF has alleged an enforceable contract, the Court denies Avior's motion to dismiss and allows the breach of contract claim to proceed.

## BACKGROUND

### I.  Allegations in the Amended Complaint[1]

AELF is a commercial aircraft trading and leasing company organized in Puerto Rico. Its sole shareholder, director, and president, Victoria Ricks, lives in and has an office in Chicago, Illinois. Avior is a Venezuelan airline.

On January 17, 2020, Avior and AELF entered into an Omnibus Agreement.[2] The Omnibus Agreement addressed (1) Avior's past transactions with AELF through its purchasing agent, Shell Aerospace Supplies, LLC ("Shell"); (2) Shell's defaults under its prior agreements with AELF; (3) AELF's prior lawsuit against Shell (No. 19 C 2551 (N.D. Ill.)) and the settlement agreement between the parties; (4) Avior's payments to AELF both pre- and post-settlement; (5) credits AELF agreed to provide; and (6) the parties' obligations going forward. Section 2.1 of the Omnibus Agreement indicated that, as of January 17, 2020, Avior owed AELF $21,096,889.52, allocated to Avior's or its affiliates' purchase of seven aircraft: two Airbus A340-300 aircrafts bearing the manufacturer's serial numbers 199 (the "199 Aircraft") and 242,

---

[1] The Court takes the facts in this section from AELF's amended complaint and the exhibits attached thereto and presumes them to be true for the purpose of resolving Avior's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court may consider "documents that are central to the complaint and are referred to in it" in ruling on a motion to dismiss, *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

[2] Dynamo Investments Limited ("Dynamo") is also a party to the Omnibus Agreement. Dynamo is affiliated with Avior and the two share at least two shareholders, Jorge and Arnaldo Añez. AELF initially named Dynamo as a Defendant in this case, but AELF later dismissed its claims against Dynamo. *See* Doc. 34.

as well as five Boeing 737-400 aircrafts bearing the manufacturer's serial numbers 27002 (the "27002 Aircraft"), 27005 (the "27005 Aircraft"), 23991, 26603, and 26604.

In connection with the Omnibus Agreement, Avior executed a promissory note on January 17, 2020 (the "Aggregate Obligations Note"). The note memorialized Avior's agreement to pay AELF $150,000 per week, which AELF would apply to Avior's outstanding balance. Avior did not keep up with this payment schedule, however, and by March 13, 2020, it had fallen behind by $600,000 on its payments under the Aggregate Obligations Note. To help make up for some of the shortfall and buy itself a payment holiday, on January 28, 2020, Avior directed its insurer to send anticipated insurance proceeds to AELF, which AELF agreed to credit towards Avior's obligations under the Aggregate Obligations Note. On March 16, Avior and AELF entered into a letter agreement concerning the insurance proceeds (the "March 16 Side Letter"). AELF agreed that, upon receipt of the insurance proceeds, it would pay Avior $500,000 that Avior needed for operating expenses. AELF also agreed to apply the remaining insurance proceeds first to the balance on the 199 Aircraft, with the remainder going to the 27005 Aircraft balance. AELF received the insurance proceeds, totaling $1,923,924.20, in three installments on March 17, March 23, and May 15. On March 17, AELF directed $428,000 of the insurance proceeds to Avior. On May 14, AELF directed the insurer to retain $72,000, equivalent to the amount AELF owed Avior under the March 16 Side Letter, and apply it to Avior's outstanding balances with the insurer.

The insurance proceeds paused Avior's payment obligations through April 24, 2020. Between April 24 and September 8, when AELF filed this suit, Avior only made two additional payments, totaling $750,000. Avior also made a $145,000 payment on September 22. As of

October 16, Avior owed AELF $2,959,095.80 under the terms of the Aggregate Obligations Note.

The Aggregate Obligations Note provides that the failure to pay "any amount due under this Note, under the Omnibus, or under the New Aircraft Purchase Agreements within five (5) days after such payment was due" amounts to an Event of Default. Doc. 38 ¶ 27. An Event of Default under the Aggregate Obligations Note allows AELF to declare the note and all other related obligations immediately due and payable. On October 19, AELF provided Avior with notice of default and accelerated Avior's obligations under the Aggregate Obligations Note, demanding that Avior pay the balance, $18,789,375.09, immediately. On October 30, Avior made a $554,092.82 payment, which AELF applied to the outstanding balance on the 27005 Aircraft as well as to the accelerated obligations under the Aggregate Obligations Note. When AELF filed its amended complaint on January 5, 2021, Avior owed AELF $18,398,590.49.

## II.    Procedural History

AELF initially filed suit on September 8, 2020. It brought claims against Avior, Dynamo, and TVPX Aircraft Solutions, Inc. ("TVPX"), a Colorado corporation with a Trust Agreement with Dynamo dated August 4, 2020 that named TVPX as the owner trustee of the 27002 and 27005 Aircraft. In its complaint, AELF sought a declaratory judgment that it had title to a CFM56-3B2 aircraft engine bearing serial number 725105 ("ESN 725105") and that Avior, Dynamo, and TVPX had no right to possess or use ESN 725105 (Count One). AELF also brought claims for breach of contract related to defaults under the parties' agreements concerning the 27002 and 27005 Aircraft and asked for an order granting AELF possession of and title to those two aircraft (Counts Two and Three). In connection with its complaint, AELF filed a motion for a temporary restraining order and preliminary injunction, seeking to preserve

the status quo pending a final judgment on the merits. The Court held hearings on the request for injunctive relief, but before it could issue a ruling, the parties entered into a settlement agreement. Avior agreed to make two payments to AELF: (1) $145,000 on September 21, to be applied to the balance on the 27002 Aircraft; and (2) $550,000 on October 30, which AELF would also apply to the balance on the 27002 Aircraft and the Aggregate Obligations Note. The parties agreed that this case would remain stayed pending Avior's payments and that once payment was made, title to the 27002 Aircraft would transfer to Avior and the lawsuit would be dismissed with prejudice. In its settlement offer, Avior stated that "[i]f AELF wants to continue to have any sort of continuing relationship with the Anez family, this proposal to resolve all matters in litigation is the best that Avior/Dynamo can do." Doc. 20 at 4. Avior further stated that AELF's acceptance of the proposal "allows [the parties] to resolve both the TRO and the lawsuit." *Id.* AELF accepted Avior's offer in full on September 17. The Court then stayed the proceedings pending performance of the settlement terms.

On October 19, after Avior made the first payment due under the parties' settlement agreement, AELF sought leave to file an amended complaint asserting a breach of contract claim for Avior's overarching default under the Aggregate Obligations Note. AELF indicated its request was prompted by Avior's request that AELF return certain deposits Avior had made on other aircraft by that date, which AELF interpreted as a repudiation of the parties' settlement agreement. The Court denied the motion without prejudice. Avior made the second payment as required under the terms of the settlement agreement on October 30, and AELF then released the mortgages and liens related to the 27002 and 27005 Aircraft. The parties proceeded to a settlement conference, which was unsuccessful. On December 23, AELF voluntarily dismissed Dynamo and TVPX from the case and again sought leave to file an amended complaint against

5

Avior. The Court allowed AELF to file the amended complaint on January 4, 2021, which AELF did the following day. Avior responded by filing both a counterclaim and a motion to dismiss.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). To survive a Rule 12(b)(6) motion, the complaint must assert a facially plausible claim and provide fair notice to the defendant of the claim's basis. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Adams v. City of Indianapolis*, 742 F.3d 720, 728–29 (7th Cir. 2014). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I.     Effect of Settlement Agreement

Initially, Avior argues that the Court must dismiss the amended complaint because the parties entered into a settlement agreement resolving all disputes related to this litigation. Avior contends that the agreement to dismiss the lawsuit extends to the breach of contract claim in the amended complaint because the amended complaint arises out of the same documents and nucleus of fact as the initial complaint. A release is an affirmative defense that a party must raise in its responsive pleading. Fed. R. Civ. P. 8(c)(1); *Caudill Seed & Warehouse Co. v. Rose*, 868

F.3d 558, 560 (7th Cir. 2017). A plaintiff need not "anticipate and negate [a release] in her pleading." *Perry v. Merit Sys. Prot. Bd.*, --- U.S. ----, 137 S. Ct. 1975, 1986 n.9 (2017). However, a release may form the basis of a dismissal at the pleading stage "when the factual allegations in the complaint unambiguously establish all the elements of the defense."[3] *Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). "[T]o successfully assert the affirmative defense of release, a defendant must show that the release is valid and that the release covers the claims at issue in the case." *Dyson, Inc. v. Bissell Homecare, Inc.*, 951 F. Supp. 2d 1009, 1034 (N.D. Ill. 2013).

Illinois law governs the construction and enforcement of a settlement agreement, *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 490 (7th Cir. 2002), with the Court looking to general principles of contract law, *Cannon v. Burge*, 752 F.3d 1079, 1088 (7th Cir. 2014); *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). "The primary objective in construing a contract is to give effect to the intent of the parties. A court must initially look to the language of a contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Gallagher v. Lenart*, 226 Ill. 2d 208, 232–33 (2007) (citations omitted). "General words of release are restrained in effect by the specific recitals contained in the document," with the parties' intentions controlling the release's scope and effect. *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1014 (2010). The Court only considers extrinsic evidence if an ambiguity exists. *Whitlock*, 144 Ill. 2d at 447.

---

[3] Although the release defense is more properly addressed on a motion for judgment on the pleadings under Rule 12(c), the Court finds it can address the argument here because the parties filed the settlement agreement on the docket, providing the Court with the information needed to determine whether that agreement unambiguously bars AELF's current claims. *See ADM Alliance Nutrition, Inc. v. SGA Pharm Lab, Inc.*, 877 F.3d 742, 745–46 (7th Cir. 2017) (parties' failure to move for judgment on the pleadings was harmless because the district court properly had the language of the release before it on the motion to dismiss).

Here, the parties never memorialized their September 2020 settlement agreement in a formal document. Instead, the parties filed a memorandum of settlement agreement on the docket consisting of an email exchange between counsel for AELF and Avior. Avior offered to make two payments, totaling approximately $695,000, by October 30, 2020 in exchange for title to the 27002 Aircraft and dismissal of the lawsuit with prejudice. *See* Doc. 20 at 3 ("The lawsuit will remain in a stay pending this payment. Once this has been accomplished, title to the 002 Aircraft should be transferred to my clients and the lawsuit can be dismissed with prejudice. If my clients fail to make the payment, the lawsuit will go forward and you may do as you deem necessary with the secured assets."). Avior's offer also included language stated that its offer would resolve "all matters in litigation" and "both the TRO and the lawsuit." *Id.* at 4. Counsel for AELF ultimately accepted Avior's offer without any changes. *Id.* at 1 ("Consider the offer [Avior] extended . . . accepted (without the changes I made in my response)."). Thus, the parties agreed that, once Avior made the required payments, AELF would dismiss the lawsuit with prejudice.

Although AELF did drop all claims it raised in its initial complaint, AELF asserted a new claim against Avior under the same case number. Avior argues that this goes against the parties' agreement that the payments would settle "all matters in litigation." *Id.* at 4. AELF responds that the parties did not contemplate precluding AELF or Avior from bringing different claims against the other party related to alleged breaches of their obligations under the Omnibus Agreement and the Aggregate Obligations Note, with the settlement instead resolving only a small piece of their dispute.

The Court agrees with AELF that the language used by the parties ("the lawsuit can be dismissed with prejudice" and that the payment would settle "all matters in litigation" and "the

8

TRO and the lawsuit") encompassed the settlement only of AELF's claims in the initial complaint concerning possession of and title to the 27002 and 27005 Aircraft, and possession and use of the ESN 725101 engine. Although AELF based its breach of contract claims on the same underlying default now at issue in the amended complaint—Avior's failure to make payments under the Aggregate Obligations Note, *see* Doc. 1 ¶¶ 97, 99, 103, 105—AELF limited the claims in the initial complaint to questions of possession of and title to the two aircraft. Read against the complaint, the language the parties used in their settlement agreement concerning resolution of "matters in litigation" and "this lawsuit" did not contemplate the release of any and all claims arising under the Omnibus Agreement or the Aggregate Obligations Note but only resolution of claims related to possession of and title to the 27002 and 27005 Aircraft, as well as the ESN 725105 engine. *See Heard v. Tilden*, 809 F.3d 974, 979 (7th Cir. 2016) (references to specific lawsuits "limited the scope of the release to claims arising in those actions"); *Taylor v. Wexford Health Sources, Inc.*, No. 16-cv-3464, 2018 WL 1174397, at *5 (N.D. Ill. Mar. 6, 2018) ("Under Illinois law, the specific language controls; it limits the release to claims arising from the facts in the specified actions."). The parties did not use broad language that could have encompassed the claim AELF raises in the amended complaint, such as "the release of all claims arising under the Omnibus Agreement, the Aggregate Obligations Note, and related documents," or "any and all claims that the parties may have against each other or could have filed in the lawsuit." *Cf. Platinum Supplemental Ins., Inc. v. Guarantee Tr. Life Ins. Co.*, 989 F.3d 556, 564 (7th Cir. 2021) (phrase "all claims that were filed or could have been filed" entailed "a broad, unqualified release of claims"); *Crosby v. City of Chicago*, 949 F.3d 358, 361 (7th Cir. 2020) ("[T]he contract makes plain that in exchange for the settlement money, Crosby agreed to do more than dismiss his existing suit with prejudice: he also agreed to release the City, Gonzalez,

9

and its officers from liability for 'all claims he had, has, or may have in the future . . . arising either directly or indirectly out of the incident which was the basis of this litigation.' The agreement was designed to resolve *all* claims related to the incident, not only the ones that Crosby asserted in his first suit.").

Therefore, nothing in the settlement agreement precludes AELF from bringing new claims against Avior with respect to the Omnibus Agreement and the Aggregate Obligations Note, just as it does not preclude Avior from pursuing its counterclaims.[4] At the initial motion hearing on AELF's request to file an amended complaint in October 2020, Avior's counsel appeared to acknowledge this fact, stating that the parties' settlement agreement was only one step in resolving the parties' then-existing disputes. Because AELF's amended complaint does not bring any specific claims against Avior related to the 27002 and 27005 Aircraft, instead focusing on Avior's overarching failure to fulfill its payment obligations under the Aggregate Obligations Note, the Court does not find that the settlement agreement requires dismissal of the amended complaint.

## II. Sufficiency of the Allegations

Alternatively, Avior argues that AELF has failed to state a breach of contract claim. Under New York law, which the parties agree governs the breach of contract claim, AELF must allege (1) the existence of an enforceable contract, (2) its performance under the contract, (3) Avior's breach of the contract, and (4) resulting damages. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004). Avior challenges the existence of an enforceable contract, arguing that AELF did not provide consideration for the Aggregate Obligations Note and related agreements, and that the Omnibus Agreement and Aggregate

---

[4] While AELF did not file a separate case to raise its latest claim, instead just amending the complaint under the same case number, the Court finds any such error harmless.

10

Obligations Note amount merely to an agreement to agree and do not reflect a meeting of the minds.

As to the first argument, consideration "consists of either a benefit to the promisor or a detriment to the promisee." *Weiner v. McGraw-Hill, Inc.*, 443 N.E.2d 441, 444 (N.Y. 1982). "It is enough that something is promised, done, forborne or suffered by the party to whom the promise is made as consideration for the promise made to him." *Hollander v. Lipman*, 885 N.Y.S.2d 354, 355 (N.Y. App. 2009) (quoting *Hamer v. Sidway*, 27 N.E. 256, 257 (N.Y. 1891)). Avior argues that the Omnibus Agreement and Aggregate Obligations Note do not include any consideration from AELF in exchange for Avior's payments. But this ignores the fact that, in entering the Omnibus Agreement and Aggregate Obligations Note, AELF agreed to forbear from exercising its rights to immediately collect payment from Avior as the guarantor of Shell's obligations. *See Foresco Co. v. Oh*, 696 F. App'x 550, 551 (Mem) (2d Cir. 2017) ("There is no doubt that an agreement by the creditor to forbear the collection of a debt presently due is a good consideration for an absolute or conditional promise of a third person to pay the debt." (quoting *Strong v. Sheffield*, 39 N.E. 330, 330 (N.Y. 1895))); *Dan-Bunkering (Am.), Inc. v. Tecnologias Relacionadas con Energia y Servicios Especializados, S.A. de C.V.*, No. 17 Civ. 9873 (KPF), 2020 WL 3893281, at *8 (S.D.N.Y. July 10, 2020) ("Forbearance actually given can serve as consideration, even if not expressed in an agreement."). AELF also agreed to provide certain credits to Avior, transfer title to Avior of an aircraft engine bearing serial number ESN 856529 at the time of execution of the Omnibus Agreement, and transfer title to specific aircraft to Avior or its affiliates as Avior paid down its obligations on the aircraft. And in the Aggregate Obligations Note, the parties recited that AELF was extending Avior a loan for over $21 million in exchange for Avior's promise to repay that amount by way of $150,000 weekly payments. *See Beitner v.*

11

*Becker*, 824 N.Y.S.2d 155, 157 (N.Y. App. 2006) (consideration existed where the defendant executed a promissory note to pay the plaintiff in exchange for a loan the plaintiff extended to the defendant). Thus, the Court finds that the pleadings sufficiently allege that AELF provided consideration for the Omnibus Agreement and the Aggregate Obligations Note. *See Lebedev v. Blavatnik*, 142 N.Y.S.3d 511, 517 (N.Y. App. 2021) ("The slightest consideration is sufficient to support the most onerous obligation." (quoting *Mencher v. Weiss*, 114 N.E.2d 177, 181 (N.Y. 1953))).

Next, Avior argues that the Omnibus Agreement and Aggregate Obligations Note are unenforceable because they contemplated additional written agreements that the parties never executed. Under New York law, "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981); *see also Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288–89 (2d Cir. 2019) ("The manifestation of mutual assent must be sufficiently definite to assure that the parties are truly in agreement with respect to all material terms."). Avior highlights that the parties had not agreed on the condition and delivery date of certain aircraft, with those details contained in the unexecuted agreements. The language of the Omnibus Agreement and Aggregate Obligations Note, however, does not suggest that the "consummation of" the additional agreements related to the condition and delivery of the aircraft "was a precondition to" Avior's payment obligations under the Aggregate Obligations Note. *See IDT Corp. v. Tyco Grp.*, 918 N.E.2d 913, 915 n.2 (N.Y. 2009) (considering "whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance"). Even absent signed versions of the circulated draft aircraft purchase agreements, the Aggregate Obligations Note definitively sets forth Avior's

12

agreement to make payments on a weekly basis to AELF, which AELF would credit against Avior's outstanding obligations. Avior does not dispute that the parties agreed to this payment schedule, which forms the basis of AELF's claim for breach of the Aggregate Obligations Note. At this stage, then, the Court finds that AELF has sufficiently alleged an enforceable contract. Avior may further explore any defenses it may have to AELF's allegations that the parties had an enforceable contract in discovery.

## CONCLUSION

For the foregoing reasons, the Court denies Avior's motion to dismiss the amended complaint [44].

Dated: May 24, 2021

_____
SARA L. ELLIS
United States District Judge